A06A1413. JONAS et al. v. JONAS.
(633 SE2d 544)

BLACKBURN, Presiding Judge.

Edward Jonas, Jr. (the "uncle") and Gaynelle Jonas (the "grandmother") appeal a jury award of compensatory and punitive damages in favor of Regan Jonas (the "daughter") arising out of the uncle's alleged breach of fiduciary duties and fraud associated with the administration of certain estates of which the daughter was the sole beneficiary. The uncle and the grandmother argue that their initial appeal was wrongfully dismissed for failure to post a supersedeas bond and further that the court erroneously instructed the jury and failed to grant a directed verdict on various claims. We agree and reverse.

Construed in favor of the verdict, the evidence shows that a 1998 car accident killed the daughter's father, mother, and brother, leaving the daughter as the sole survivor of the accident. Shortly thereafter, the daughter's uncle volunteered to take over the administration of the three intestate estates, to which the daughter agreed based on the uncle's representation that he would look out for her best interests, as she was the sole beneficiary of the three estates. The uncle was duly appointed by the probate court as administrator of the estates.

The father had a life insurance policy of approximately $500,000 that named the mother as the primary beneficiary and the father's father (hereinafter the "grandfather") as the secondary beneficiary.

---

[1] *Harden v. Young*, 268 Ga. App. 619, 620 (606 SE2d 6) (2004).

[2] *Simmons v. Sopramco III, LLC*, 278 Ga. App. 830 (630 SE2d 61) (2006).

The mother had a policy of approximately $160,000 that named the father as the primary beneficiary and the grandfather as the secondary beneficiary. Thus, if the mother survived the father even for a short period, the father's policy would pay her estate $500,000, which would therefore go to the daughter as the estate's sole beneficiary. In that circumstance, the mother's policy would pay $160,000 to the grandfather. Conversely, if the father survived the mother even for a short period, the mother's policy would pay his estate $160,000, which would therefore go to the daughter as the estate's sole beneficiary. In that circumstance, the father's policy would pay $500,000 to the grandfather.

On the other hand, if it could not be determined which of the parents died first, then Georgia's Simultaneous Death statute would apply, which provides that when the insured and the beneficiary have both died "and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy . . . shall be distributed as if the insured . . . had survived the beneficiary," subject to an exception not applicable here.[1] In that circumstance, the father's and the mother's policies would pay all proceeds to the grandfather as the secondary beneficiary.

Accordingly, the uncle conducted an investigation to determine the order of the deaths. Three witnesses, including the daughter, indicated that the father had died first, and one witness indicated that the mother had died first. Nevertheless, the uncle came to the conclusion that the evidence "clearly indicated" that the mother had died first. Even though this meant that at least the mother's policy should pay $160,000 to the father's estate (thus going to the daughter as the estate's sole beneficiary), the uncle as the administrator of the estates raised no protest nor pursued any litigation when the insurance company announced that it could not determine the order of death and therefore under the Simultaneous Death statute was paying the full amount of both policies to the grandfather, with none to any of the estates. As an eventual heir of the ailing 84-year-old grandfather and of the grandmother, the uncle stood to potentially benefit from this decision.

When the insurance proceeds went to the grandfather, the daughter became suspicious of her uncle, and some months later when the grandfather died and the uncle became the executor of that estate also, the daughter hired a lawyer and had the probate court remove the uncle as the administrator of the estates of the father,

---

[1] OCGA § 33-24-42.

mother, and brother on the ground of conflict of interest. The grandfather's estate gave the grandmother the $660,000 in insurance proceeds that the insurance company had previously paid to the grandfather.

Alleging that her uncle had committed fraud by telling her (without a present intent to perform) that he would look out for her best interests, and that her uncle had breached his fiduciary duties to her as the sole beneficiary of the estates he had administered, the daughter sued the uncle for compensatory and punitive damages, and jointly sued the grandmother so as to impose a constructive trust on the life insurance proceeds she had received. At the ensuing jury trial, the uncle and the grandmother moved for a directed verdict and later for judgment notwithstanding the verdict (j.n.o.v.) on all claims, which motions were denied. The jury awarded the daughter $650,000 in compensatory damages (the $500,000 from the father's insurance policy plus interest) and $150,000 in punitive damages, with both awards against the uncle and the grandmother jointly. The trial court dismissed the uncle's and the grandmother's first notice of appeal, from which order of dismissal they have appealed in the present case.

1. We first address the trial court's dismissal of the first notice of appeal. The trial court ordered the uncle and the grandmother to post a supersedeas bond of $1 million as a condition precedent to pursuing an appeal of the jury's $800,000 award. The uncle and the grandmother filed a notice of appeal but did not post such a bond. Citing the lack of the bond, the trial court dismissed the appeal.

The trial court erred. "The cases uniformly hold that the failure to post a supersedeas bond neither mandates nor permits dismissal of an appeal but simply allows the prevailing party (the appellee) to enforce the judgment pending appeal." *Hawn v. Chastain.*[2] Indeed, a trial court has no authority to require a party to post a supersedeas bond "as a condition precedent to deprive an appellant of his right to have his appeal transmitted to the appellate court for review." (Punctuation omitted.) *State of Ga. v. Vurgess.*[3] Rather, the absence of such a bond can have as the only result that "the appellee is free to enforce the judgment at his peril pending decision on appeal." (Punctuation and emphasis omitted.) Id. Any order purporting to dismiss an appeal for failure to post a supersedeas bond is "absolutely void." *Stone v. George F. Richardson, Inc.*[4]

2. Regarding the merits, the uncle and the grandmother first argue that the court erred in instructing the jury that it could award

[2] *Hawn v. Chastain*, 246 Ga. 723, 725 (273 SE2d 135) (1980).

[3] *State of Ga. v. Vurgess*, 182 Ga. App. 544, 545 (1) (356 SE2d 273) (1987).

[4] *Stone v. George F. Richardson, Inc.*, 169 Ga. App. 232, 233 (312 SE2d 339) (1983).

damages against the uncle and the grandmother without first finding (i) that the uncle had breached his fiduciary duty or committed fraud and (ii) that the circumstances justifying the imposition of a constructive trust were present. We agree and therefore reverse the entire judgment and remand the case to be retried.

Over the uncle's and grandmother's repeated objections, the court unqualifiedly instructed the jury:

> I charge you that if you determine that [the mother] survived [the father] for any period of time, however short, you shall award the proceeds of the insurance policy on the life of [the father] to [the daughter]. And the proceeds of the policy on [the mother] would go to [the grandfather].
>
> If, on the other hand, you find that [the father] survived [the mother], you shall award the proceeds of the insurance policy on the life of [the mother] to [the daughter]. And the proceeds of that policy on [the father] would go to [the grandfather].

Here, the only two defendants were the uncle and the grandmother, and the insurance proceeds were not sitting in the court registry as the result of an interpleader action. Compare *Hitchcock v. Key*[5] (insurance company interpled proceeds into court for resolution of question as to order of deaths). Therefore, in the context of this lawsuit, the key issue was whether the uncle breached his fiduciary duties owed to the daughter (or committed fraud upon her); otherwise, no damages were available as against him. Nor would any damages be available against the grandmother, as no "fraud or otherwise" by the uncle, without more, would justify the imposition of a constructive trust on the money in the hands of the grandmother.[6]

This disputed jury instruction was improper and could have misled the jury into believing that they could award judgment in the amount of the life insurance proceeds against the uncle and the grandmother without first finding that the uncle had committed either a breach of fiduciary duty or fraud. Without such a finding, a factor critical to the imposition of a constructive trust on the proceeds in the hands of the grandmother was also missing. Thus, the instruction ignored the necessity of facts prerequisite to a judgment against the uncle and the grandmother, which facts were the primary area of dispute between the parties. See *Combustion Chemicals v. Spires*[7]

---

[5] *Hitchcock v. Key*, 163 Ga. App. 901, 902 (296 SE2d 625) (1982).

[6] See OCGA § 53-12-93 (a).

[7] *Combustion Chemicals v. Spires*, 209 Ga. App. 240, 242 (1) (433 SE2d 60) (1993).

(" 'a charge is error that assumes a fact not admitted or indisputably proven' "; judgment reversed); *Nat. Life &c. Ins. Co. v. Strickland*[8] (same). Absent the jury first finding the existence of these facts, the awarding of damages against the uncle or the grandmother was unjustified. Accordingly, the misleading jury instruction requires that we reverse and remand the case for a new trial.

3. Because some of the other enumerations of error raise issues that may affect the retrial, we address those enumerations. Most significant is the enumeration that the court erred in denying the defendants' motions for a directed verdict and for j.n.o.v. on all claims. To the extent such motions should have been granted as to certain claims, those claims would not be considered in the retrial. Specifically, the uncle and the grandmother argue that no evidence supported a finding of fraud or breach of fiduciary duty by the uncle, a finding of a constructive trust to be imposed on the grandmother, or a finding for punitive damages against either. We address these claims seriatim.

(a) *Fraud.* The daughter contends that the uncle fraudulently induced her into agreeing to his administering her father's, mother's, and brother's estates when he told her he would look out for her best interests but in fact had no present intent to do so. This caused the daughter damages when the uncle as administrator instead acted in his own best interests and chose not to pursue efforts to protect and maximize the assets of the estates. Specifically, despite evidence of the father dying first, the uncle concluded that the mother died first, which would cause the $500,000 policy to be paid to the grandfather and only the $160,000 policy to inure to her benefit through the father's estate. Worse, however, was that the uncle did not even seek to have the $160,000 policy paid to the father's estate and instead as administrator agreed with the insurance company's determination that the parents died simultaneously, which resulted in all insurance proceeds going to the grandfather.

The daughter presented no evidence, however, to support the key allegation that the uncle's promise to look out for the daughter's best interests was made with no present intent to perform. On appeal she can only point to the uncle's failure to perform the promise. This is insufficient. As explained in *Buckley v. Turner Heritage Homes,*[9]

[t]he general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform

---

[8] *Nat. Life &c. Ins. Co. v. Strickland*, 91 Ga. App. 179, 186 (85 SE2d 461) (1954).

[9] *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (3) (547 SE2d 373) (2001).

promises made. Otherwise, any breach of a contract would amount to fraud. An exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place.

Some evidence (beyond the mere failure to perform) must support a finding that the promise was made with a present intent not to perform. The absence of such additional evidence in the record here requires judgment in favor of the defendants on this issue. See, e.g., id. at 796 (3); *Davidson Mineral Properties v. Baird*[10] (lack of evidence of present intent not to perform mandates summary judgment); *Perimeter Realty v. GAPI, Inc.*[11] (same).

Because the trial court erred in denying the motion for directed verdict on the fraud claim, that fraud claim will not be considered in the retrial.

(b) *Breach of fiduciary duty.* The daughter alleged that the uncle breached his fiduciary duties owed her as the sole beneficiary of the estates he was administering when he failed to pursue efforts to have the $500,000 or the $160,000 policy paid to the estates. The uncle countered that he breached no duties.

"It is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler.*[12] As administrator of the three estates, the uncle owed fiduciary duties to the daughter as the sole beneficiary, including the duty to act in the utmost good faith in protecting and maximizing the assets of the estates (*Bloodworth v. Bloodworth*;[13] *Home Ins. Co. v. Wynn*[14]) and the "duty to avoid potential conflicts of interest." *Bloodworth*, supra, 260 Ga. App. at 471 (1). *Home Ins. Co.* explains:

> An agent cannot place herself in a position in which her duty and interests conflict with those of her principal. The agent is not permitted to acquire rights in the settlement antagonistic to the principal's interests. It is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously she will favor one

---

[10] *Davidson Mineral Properties v. Baird*, 260 Ga. 75, 78 (5) (390 SE2d 33) (1990).

[11] *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 595-596 (10) (533 SE2d 136) (2000).

[12] *Griffin v. Fowler*, 260 Ga. App. 443, 445 (1) (579 SE2d 848) (2003).

[13] *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 470-471 (1) (579 SE2d 858) (2003).

[14] *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 222-223 (1) (493 SE2d 622) (1997).

side as against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead her to give herself an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting to give herself the benefit of all doubts. Note that it is not necessary for the beneficiaries to show that the trustee acted in bad faith, gained an advantage, or that they were harmed. The trustee must avoid being placed in such a position, and if she cannot avoid it, she may resign, may fully inform the beneficiaries of the conflict, or may request the court to appoint a guardian ad litem to protect the unprotected interests.

(Citations and punctuation omitted.) Id. at 222 (1).

As an eventual heir of the ailing 84-year-old grandfather and of the grandmother, the uncle had a personal interest in seeing the grandfather receive all the insurance proceeds, which conflicted with his duty to represent the estates' interests in receiving the proceeds. Thus, some evidence showed that he breached his fiduciary duties not only through the conflicts of interest he failed to avoid but also through his actions in acquiescing in the insurance company's decision to pay all the proceeds to the grandfather despite the evidence showing that the mother survived the father and despite his own conclusion that the father survived the mother.[15] Inasmuch as the jury found in this case that based on the evidence, the mother survived the father, such establishes the causal link showing that had the uncle diligently pursued this same result, he most likely would have succeeded and the daughter would have received the proceeds of the $500,000 policy.

The trial court did not err in denying the motion for directed verdict and the motion for j.n.o.v. on the claim for breach of fiduciary duty by the uncle. Therefore, this claim is available to be retried.

(c) *Constructive trust.* The daughter sued the grandmother to impose a constructive trust on the life insurance proceeds the grandmother had received from the grandfather's estate, which the grandfather himself had received from the life insurance company based on

---

[15] We note that ordinarily the probate court has exclusive, original jurisdiction over a claim that an executor or administrator has breached a fiduciary duty. *Traub v. Washington*, 264 Ga. App. 541, 547 (7) (591 SE2d 382) (2003). However, no party raised this point below, and a superior court can exercise its concurrent jurisdiction over the administration of estates when complete and adequate remedies at law are unavailable. *Powell v. Thorsen*, 248 Ga. 697, 699 (285 SE2d 699) (1982). See *Benefield v. Martin*, 276 Ga. App. 130, 131 (622 SE2d 469) (2005). This question has therefore not been litigated here, and the trial court has not had the opportunity to exercise its discretion or to make any relevant determinations.

the uncle's failure to contest that the parents' deaths were simultaneous. We hold that inasmuch as the grandmother would have been unjustly enriched by receiving the money that was paid out due to the uncle's breach of fiduciary duty, the court correctly refused to dismiss this claim.

OCGA § 53-12-93 (a) provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." It "is a remedial device created by a court of equity to prevent unjust enrichment." (Punctuation omitted.) *Atlanta Classic Cars v. Chih Hung USA Auto Corp.*[16] See *Edwards v. Edwards*[17] (constructive trust implied to prevent unjust enrichment). If the person holding legal title to the property is a bona fide purchaser without notice, no unjust enrichment takes place and no trust is implied. See *Parlin v. McClure*[18] (innocent purchaser of property takes such free of trust); *Deer Creek, Inc. v. Section 1031 Svcs.*[19] (innocent investor allowed to reclaim own investment); *Atlanta Classic Cars*, supra, 209 Ga. App. at 910 (2) (innocent creditor allowed to keep funds paid on debt).

Here, the evidence supported a finding (and correspondingly supported a jury charge that the jury could so find) that the insurance funds in the hands of the grandmother were subject to a constructive trust. The insurance company paid the funds to the grandfather due to the uncle's acquiescence to the conclusion that the parents' deaths were simultaneous, which acquiescence in light of the contrary evidence and in light of his own conclusion that the mother died first was a breach of his fiduciary duties owed to the daughter. Evidence showed that the grandfather would be unjustly enriched by retaining those insurance funds that should have been paid to the daughter through the estates. See Bogert, Trusts & Trustees, Secs. 471 to 510, § 476, p. 125 (2d ed. revised 1978) ("[t]he beneficiary of the insurance policy paid no value for any of the benefits coming to him" and is therefore not protected from a constructive trust as an innocent purchaser). Receiving the proceeds under the grandfather's will, the grandmother was also not an innocent purchaser and therefore took title to the proceeds subject to the trust impressed upon them. See *Hall v. Turner*.[20]

---

[16] *Atlanta Classic Cars v. Chih Hung USA Auto Corp.*, 209 Ga. App. 908, 910 (2) (439 SE2d 498) (1993).

[17] *Edwards v. Edwards*, 267 Ga. 780, 782 (2) (482 SE2d 701) (1997).

[18] *Parlin v. McClure*, 169 Ga. 576, 577-578 (150 SE 835) (1929).

[19] *Deer Creek, Inc. v. Section 1031 Svcs.*, 235 Ga. App. 891, 894 (510 SE2d 853) (1999).

[20] *Hall v. Turner*, 198 Ga. 763, 772 (1) (32 SE2d 829) (1945).

The trial court did not err in denying the motions for directed verdict and for j.n.o.v. as to the claim for a constructive trust against the grandmother. Therefore, this claim is available to be retried.

(d) *Punitive damages.* As to punitive damages, the trial court did not err in denying the motion for directed verdict insofar as such concerned the uncle, for punitive damages are available against defendants who breach a fiduciary duty. See *Home Ins. Co.*, supra, 229 Ga. App. at 223 (2) (" '[a] breach of fiduciary duties is sufficient to support an award of punitive damages' "). But as to the grandmother, no evidence showed that she was anything other than an innocent recipient of the insurance proceeds from the grandfather's estate, and therefore punitive damages were not available against her. The trial court erred in denying the motion for directed verdict as to the punitive damage claim against the grandmother. Thus, only the punitive damage claim against the uncle is available to be retried.

4. Finally, the uncle and the grandmother argue that the trial court erred in excluding certain testimony of a representative of the insurance company who was not involved in the decision or process to pay the insurance proceeds to the grandfather. But the uncle and the grandmother failed to make an offer of proof as to what the representative would have said. "This Court cannot determine the propriety of the trial court's ruling without a proffer of the excluded evidence or testimony." *Dent v. Candler Hosp.*[21]

*Judgment reversed and case remanded. Mikell and Adams, JJ., concur.*

DECIDED JUNE 12, 2006 —
RECONSIDERATION DENIED JUNE 27, 2006.

*Thomas F. Jones,* for appellants.
*Reynolds & McArthur, W. Carl Reynolds, Bradley J. Survant,* for appellee.

---

[21] *Dent v. Candler Hosp.*, 236 Ga. App. 540, 542 (2) (512 SE2d 392) (1999).